Our final argument of the day is Sterlinski v. Catholic Bishop of Chicago. Ms. Galevich. Good morning, Your Honor. May it please the Court, my name is Lou Anne Galevich and I represent the Plaintiff Appellant Stanislaw Sterlinski. We are here today to determine whether the lower court erred in determining that the ministerial exception applied to Mr. Sterlinski, thereby precluding him from bringing his Title VII national origin lawsuit as well as his age discrimination claims. In Hosanna-Tabor, the U.S. Supreme Court held that there was no bright line test for determining whether the ministerial exception applied to an employee of a religious organization and there was no rigid formula for deciding whether an employee qualifies as a minister. And as this Court has stated in Brescott v. Jewish Day School, the courts must engage in a very fact-intensive analysis in order to determine whether the The factors include, but they're not limited to, plaintiff's job duties, their formal title, whether a plaintiff held himself or herself out to be a minister, religious training that they may have received. Plaintiff submits that Mr. Sterlinski should not have been held to the as Director of Music from 1992 until the day that he was terminated in 2015. In 2014, Mr. Sterlinski had been demoted. He was a full-time employee, demoted to part-time. At that time, many of the duties that he had previously held were taken away from him. And they were very important duties, but the only duty that he actually really did hold from 2014, June, until the date of his termination in February, was as an organist. What we think is important here, Your Honors, is that as an organist, it required knowledge of music, knowledge of instrumentation. He learned to play the organ, and that's what he did. Yes, he played it during a mass, during religious functions, whenever he was required to, but what he did was play an organ. He played what he was told, how the music was supposed to be played, and he played from sheet music, basically, that tells him how fast that music should be played, tells him how loud the music should be played. He had a lot of years of experience. I mean, from the time he started in 1992 through 2015, he probably played some of the same music perhaps 25,000 times. That's how often he played it, so often that it could be considered to be robotic. Is there an authority you want to point us to in which an employee performs music during religious services and is not considered a minister? I was unable to find a music director or an organist where that has happened. I know that there are cases out there, such as Tomek from the Seventh Circuit, where yes, he was an organist, he was a music director, he was an organist, but he chose his music. He chose what was to be played. I know the court had argued that how he played the music or what music he actually chose, such as Jesus Christ Superstar, could have been considered very important because it changes the whole tenor of the religious ceremony. But that was not Mr. Strelinsky. Mr. Strelinsky played an organ. He knew how to play the notes. It's a purely secular activity. You could pull someone from the street who knows how to play a piano. It seems odd to call playing an organ in a Roman Catholic mass as purely secular. The bishop has explained why the Catholic Church views this as part of the process of ministry. Are you contending that that explanation is a pretext for discrimination? It's not what the bishop has said that's a pretext. The discrimination comes farther down. I ask this because the material the Church is relying on seems quite general and seems to predate the discharge of Mr. Strelinsky. Is there any suggestion, for example, that it was implied that this distinction between what is ministerial and what is not was applied differently to him than applied to others? That's a common argument in a pretext analysis. Your Honor, I don't think that that's where the pretext is coming in. It's the discrimination aspect. Maybe I'm not understanding. I wish you'd address my question rather than tell me why you would ask. In my place, you would have asked a different question. I'm asking, are you contending that this is pretextual? Are you contending that the Church's understanding was applied differently to Strelinsky and to other music performers? I believe that the Church has their opinion and that is their opinion and that they probably apply this opinion to all of their employees. I understand by this and from your brief that you are not contending that this was applied differently to any music performer other than Strelinsky. Is that a correct statement? I can't see such an argument in your brief, but I want to be sure what your argument is. I'm sorry, Your Honor. Could you repeat that question? Yes, I have two questions. One, are you contending that the Church's statement about when music plays a religious role in the religious ceremony, are you contending that that is pretextual? That's an important word in federal employment discrimination law. Are you contending that it's pretextual? I couldn't see such an argument in your brief. Maybe I'm misunderstanding it. That's why I'm asking. We're not contending that it was pretextual. All right. Are you contending that the Church has applied this understanding differently to Strelinsky and to other organists? No, Your Honor, we do not. Okay. Thank you. But what we are saying, though, is that what Mr. Strelinsky actually did, it's... You don't need to have music in a religious ceremony. What Mr. Strelinsky was doing is he was playing notes, he was accompanying the choir, accompanying the congregation as we see it. The Roman Catholic Church apparently has a different view about whether you need music and about its importance in the ceremony. That's why I'm asking whether you think this is... Well, you've already told me you're not contending it's pretext. But what the Church's view is, is the Church's view, right? It may be that Mennonites have a totally, and certainly Quakers, have a totally different view about music in religious ceremonies. But it's not a... The Society of Friends is not a different, and it's the Roman Catholic Church. Yes, Your Honor. I think the way we're looking at it is that the ministerial exception should only be as broad as necessary, and that we should not just look at what the Catholic Church or any other religious organization says is what's important to them necessarily, except to say that the exception should be no broader than is necessary to protect the Constitution and the United States laws. And just because the Church says this is the way it is, they can have, forgive me, a custodian working at the same time during a Mass, making the facilities more amenable to prayer. And that person, we contend, is no different necessarily than Mr. Strelinsky in terms of whether he should be considered a minister or not. I'm confused by your argument about a Polish parish allegedly discriminating against a Polish organist. Is it because the priest identified himself as Roman? Is that the nature of that? That's correct, Your Honor. Play that out for us. What about his self-designation as Roman made it somehow discriminatory? Mr. Strelinsky is very Polish-centric, and a lot of how he practices personally and his just general beliefs are very centric to the Polish type of church. Isn't this a Polish church? It is, but I don't believe that the pastor was Polish, that he more considered himself Roman, and that it was more nationalistic that way. Thank you, Counsel. Mr. Gioli. Thank you, Your Honor. May it please the Court. The question is whether Mr. Strelinsky was a minister under the ministerial exception. In Hosanna Tabor, Justice Alito observed, those who perform important functions in worship services and in the performance of religious ceremonies and rituals should be considered ministers for the purpose of the ministerial exception. This Court in Tomek addressed a case very similar to this one where a music director for the Diocese of Peoria who also was a church organist brought a discrimination claim that was dismissed on a Rule 12 motion by this Court pursuant to the ministerial exception. And yes, part of the discussion of that case involved the fact that the music director exercised some discretion in the selection of music, although he did not have the final say. But part of the discussion in that case and part of its holding had to do with the meaning of music at the Catholic Mass and certainly focused on the fact that even as a mere performer of the music, Mr. Tomek was still a minister. Quote, music is a vital means of expressing and celebrating those beliefs which a religious community holds most sacred. In the Kanada case, the Fifth Circuit addressed exactly the facts of this case where all you had was a, quote, unquote, mere accompanist. Well, how far do you want to take that? Having, I would suppose, having a crucifix that is clean is an important part of the religious ceremony. Would it follow that the janitor is a minister because of the importance of that symbology? Judge Easterbrook, not necessarily, but let's make a distinction between your example. I'm worried about not necessarily. That implies that sometimes the janitor is a minister. Well, the only reason I'm hesitating is that, as you observed earlier, different denominations assign different tasks and roles and have different beliefs about the employees of their own churches. On behalf of the Catholic bishop, we're not making the claim that the janitor is a ministerial employee. However, this case is distinguishable from that example in an important way. Certainly, the janitor who cleans the crucifix is doing something that matters, but he's not actually participating in, conducting, performing, and actually conducting a religious worship ceremony. What the pleadings in this case establish is that the church organist is a participant in the actual worship ceremony itself. And if we have any beef with the way we got before this court, it's that we made a motion to dismiss pursuant to Rule 12, where on the pleadings alone, it was clear that this was a minister under Kenada. The fact is, it could be a per se rule that a person who actually conducts, performs in, and participates in presenting the religious worship ceremony is a minister for the purposes of the ministerial exception. That is the face of the church to its congregation. That is the actual interaction with the congregation in conducting worship. There really couldn't be a more sacred space, and there really couldn't be a higher level of protection under the First Amendment than that. There are a lot of faces. I know very little about particular denominations' religious celebration, but many Protestant denominations have deacons who play crucial roles in the service. In that view, is every deacon a minister? So that the deacons can never be changed without review by... Well, you get the idea. Certainly. Judge Easterbrook, a deacon who is participating in presenting, performing, conducting the actual religious service of the denomination, whatever it may be, is a minister. In this case, for instance, one of the arguments Mr. Strelinsky makes is that he exercised no control over the selection of the music and he only played the music robotically the way it was written on a piece of paper. Well, then of course he was fired. Anybody who plays music robotically is not a good organist. Well, that may be a matter of taste, but part of the argument Mr. Strelinsky made was that the pastor, who by the way is Polish, and I think quite obviously the designation of Roman had to do with the religious setting of this, the Roman Catholic Church, merely emphasizing the ministerial nature of the position. But the point is that Mr. Strelinsky's argument that he played only in the traditional manner as directed by the pastor, only played the notes that were on the page, may be played robotically, serve only to confirm that there is a message in that, that there is meaning to that, that it matters how it's played, that it's affecting the mass. That's why as a mere accompanist he's still a minister. Anybody who plays a role that actually presents the worship to the congregation is going to be a minister. It's no different from the lector. The lector is merely reading the Bible. They're just words on the page. He's reading them in a monotone. He has no control over which selections get read at mass. That's set by the Roman Missal, but the lector is actually preaching the word of God to the congregation. I'm still worried about this. If you use the participate in the service as the standard, then Hosanna Tabor comes out the other way because she was a school teacher. It's a matter of the difference between a per se case that requires no further inquiry and cases that raise questions where a court needs to inquire whether the employee who is either not ordained or not quite obviously a minister nonetheless is performing religious functions. In Hosanna Tabor you have a teacher, just as this court dealt with in Gruscott, where there was an argument made that because the person was a teacher and what they did was arguably secular, that therefore they were not a minister for the purpose of the exception. The argument was, was what they were doing enough religious? Was there enough about them that the ministerial exception would apply? In Hosanna Tabor the court looked at four factors but I think focused most heavily on whether the person performed important religious functions and that's certainly where Justice Alito's concurrence goes and that's certainly where this court went in Gruscott where there were two factors that went in favor of finding the Hebrew school teacher a minister and two factors that went against and the court said we don't just call it a draw because it's two factors to two factors what matters is the essential religious function that the person was performing. So I don't think there's a reason for a concern or Hosanna Tabor going out the window. It's a matter of the nature of the position. If we had a case before us today of a Roman Catholic priest who was contesting his withdrawal from a parish, you wouldn't need to apply Hosanna Tabor's four factors. You'd be able to recognize the authority of the hierarchical church to remove the clergyman. Sometimes we do have to look at the forest and not the trees. This is the actual religious worship ceremony of the Roman Catholic Church and a person who is visibly, physically presenting it. There almost doesn't need to be more discussion than that. What about security guards? Many churches and synagogues are now hiring security guards. So I think there's a distinction, if I could play that out even a little more, between let's say the ushers and a security guard. A hired security guard maybe wears a uniform, is not bearing the imprimatur of the church, is not conveying the church's message, is merely providing physical security for the building, and isn't playing a role in worship, isn't doing anything that constitutes worship or assisting the congregation in worshiping could be distinguished. An usher, on the other hand, might be a closer case, Judge Sykes, because the usher is physically assisting people to their seats, is guiding them, is guiding the communion line, and plays a role collecting the money during the offertory. So I'm not going to go as far as the usher and say they can't be the minister, but the security guard we could see would not be because of what they're quite obviously doing. And even a stronger answer, no, if you tell me they're wearing a security guard uniform with the badge of a private company and not the Knights of the Columbus emblem and providing some semblance of security which the Knights might at a Catholic Mass, but clearly with the imprimatur of the church. What really is at stake in this case is a church's right to control its own worship service. There's nothing that receives a greater level  And although we can get into the details of the evidence that was presented on summary judgment, which was uncontroverted, and Judge Easterbrook raised in the earlier colloquy, I guess and it all supports the argument that this was a minister because the church itself believed that Mr. Strelinsky was playing that role. It's almost as plain as the nose on your face. We're talking about the actual worship ceremony. If there are no other questions we ask that the court affirm the district court's order. Thank you very much. The case is taken under advisement and the court will be in recess.